UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 03–62097-CIV-COHN/SNOW

UNITED STATES OF AMERICA and the
STATE OF FLORIDA, ex rel. LANIE JOE
HEATER,

          Plaintiffs,

vs.

HOLY CROSS HOSPITAL, INC., HOLY
CROSS MEDICAL GROUP, HOLY CROSS
HEALTH MINISTRIES, INC., and
DOES 1 through 50,

          Defendants.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR VIOLATIONS OF THE FALSE CLAIMS ACT; ORDER GRANTING LEAVE TO AMEND COMPLAINT

**THIS CAUSE** is before the Court upon the Motion to Dismiss First Amended Complaint for Violations of the False Claims Act filed by Defendants Holy Cross Hospital, Inc. and Holy Cross Health Ministries [DE 62].  The Court has carefully considered the Motion [DE 62] and Memorandum of Law in Support thereof [DE 63], Relator's Response [DE 70], the Statement of Interest of the United States [DE 69] and Defendants' Reply [DE 73], and is otherwise fully advised in the premises.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Lanie Joe Heater ("Heater") is a *qui tam* relator who filed the above-captioned action on behalf of himself, the United States and the State of Florida alleging violations of the False Claims Act, 31 U.S.C. § 3729, *et seq.* ("FCA") and the Florida False Claims

Act, Fla. Stat. § 68.082, *et seq* ("Florida FCA").  The Amended Complaint alleges the following seven counts against Holy Cross and fifty unnamed defendants identified in the Amended Complaint as "Defendant Does 1-50": (1) Submitting false claims in violation of the FCA, 31 U.S.C. § 3729(a)(1) ("Count I"); (2) Conspiring to violate the FCA, 31 U.S.C. § 3729(a)(3) ("Count II"); (3) Making false records to get claims paid in violation of the FCA, 31 U.S.C. § 3729(a)(2) ("Count III"); (4) Discriminating against an employee because of his lawful conduct in furtherance of the discovery and prevention of violations of the FCA, 31 U.S.C. § 3730(h) ("Count IV"); (5) Violating the Florida FCA, Fla. Stat. § 68.082(2)(c) ("Count V"); (6) Conspiring to violate the Florida FCA, Fla. Stat. § 68.082(2)(c) ("Count VI"); and (7) Making false records to get claims paid, in violation of the Florida FCA, Fla. Stat. § 68.082(2)(b) ("Count VII").

Heater was employed by Defendant Holy Cross Hospital, Inc. ("Hospital") as the Executive Director of Revenue Management during May 2003.  (Amended Compl., ¶ 19 [DE 59].)  According to Heater's written job description, his duties included "all administrative and clinical functions that contribute to the capture, management and collection of patient service revenue," and "ensuring compliance with relevant regulations, standards, and directives from regulatory agencies and third-party payors." (Id.)  Heater alleges that while he was employed by the Hospital, he conducted interviews of mid-level management and independently reviewed medical and billing records.  (Id., ¶ 20.)  The information gathered led Heater to identify routine billing practices that failed to comply with Medicare/Medicaid requirements and allegedly resulted in false and fraudulent billing.  (Id.)  Heater states that he alerted Holy Cross's senior management to his concerns.  (Id., ¶ 21.)  Upon information and belief, Heater

2

states that senior management was already aware of the problems.  (Id., at ¶¶ 21-25.)
Regardless, Heater contends that management continued the practices.  (Id., ¶ 2.)

Based on his understanding of Holy Cross's billing procedures and the alleged
failure to correct problems that resulted in illegal practices, Heater filed the above-
captioned action on November 24, 2003 on behalf of himself, the United States and the
State of Florida pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C.
§ 3729, *et seq.* ("FCA") and the Florida False Claims Act, Fla. Stat. § 68.082, *et seq*.
("Florida FCA").[1]  In accordance with 31 U.S.C. § 3730(b) and Fla. Stat. § 68.083, the
Complaint was filed under seal to allow the United States and the State of Florida time
to decide whether to intervene in the action.  On April 3, 2006, the United States and
the State of Florida both elected to decline intervention in this case [DEs 52, 54].  The
Complaint was thereafter unsealed and Heater was notified of his right to maintain the
action on behalf of himself, the United States and the State of Florida [DEs 52, 54].
Heater elected to proceed with litigation.

On August 1, 2006, Heater served Defendants Holy Cross Hospital, Inc. and
Holy Cross Health Ministries, Inc. (collectively "Holy Cross") with his First Amended
Complaint ("Amended Complaint") [DE 59].  The Amended Complaint specifically
alleges that Defendants engaged in the following fraudulent practices:

(1)     Intentional violation of the "72 Hour Rule" which prohibits a hospital from

---

[1]   The *qui tam* provisions of the FCA and the Florida FCA authorize private
persons to initiate civil actions alleging fraud against the United States and the State of
Florida, respectively.  31 U.S.C. § 3730(b); Fla. Stat. § 68.083(2).  If, as here, the
Government declines intervention in the action, the relator can proceed with the claim
and recover between 25 and 30 percent of any monies recovered plus reasonable
expenses and attorneys' fees and costs.  31 U.S.C. § 3730(d).

billing Medicare/Medicaid for outpatient services provided to a

patient/beneficiary during the 72 hour period immediately preceding

admission of the patient/beneficiary to the hospital;

(2)     Submitting false claims for "bad debt," losses hospitals suffer when

patients fail to pay medical bills, by failing to make reasonable efforts to

collect the debt before submission to Medicare/Medicaid;

(3)     Knowingly filing false quarterly "credit balance" reports indicating that Holy

Cross owes nothing to Medicare/Medicaid;

(4)     Submitting claims that include false and inaccurate information;

(5)     Submitting claims that contain inaccurate and inflated coding;

(6)     ___Failing to identify other potential payors and submitting claims to Medicare

that should have been submitted to other payors; and

(7)     Fraudulently billing medicare by charging for services that were not

provided, charging for services that were not medically necessary, and

submitting false and inaccurate cost reports.

(Id., ¶ 26.)  The Amended Complaint does not contain documents supporting the

above-listed assertions.  However, the text of the Amended Complaint provides the

following specific examples of allegedly fraudulent behavior:

(1)     The issuance of form UB-92 Uniform Institutional Providers Bill ("UB-92

Bill") for emergency room services rendered on March 31, 2003 for

charges totaling $2,693.40, part or all of which was paid for by Medicare.[2]

---

[2]   The Amended Complaint states that the names of all patients referenced in the examples were omitted to protect the patients' privacy.

Heater alleges that another UB-92 Bill was issued for the same patient for in-patient services provided between April 3, 2003 and April 17, 2003 totaling $60,604.45.  Heater contends that the second bill sought payment for services provided within 72 hours of the emergency room treatment; (Id., ¶ 26, § A)

(2)    A UB-92 Bill for outpatient services rendered on April 25, 2003 and billed to Medicare in the amount of $115.00.  Heater alleges that Hospital records indicate that the same patient received inpatient treatment less than 72 hours later, from April 28, 2003 to May 2, 2003, totaling $70,446.89.  Upon information and belief, Heater alleges that the inpatient treatment was also billed to Medicare using a UB-92 Bill; (Id., ¶ 26, § A)

(3)    The filing of allegedly false Quarterly Credit Balance Reports to Medicare by Ms. Lourdes Belaustegui, Director of the Business Office, indicating that there are no Medicare credit balances to report for the quarter.  Upon information and belief, Heater alleges that Chief Financial Officer Linda Wilford ordered Ms. Belaustegui to file the reports in this manner; (Id., ¶ 26, § C) and

(4)    A patient was allegedly admitted in one area of the Hospital and discharged in another.  Heater alleges that the Hospital's Patient Account Management Records show two different, but overlapping, dates for treatment of the patient.  The Amended Complaint states that billing records exist for treatment from May 4, 2003 to May 8, 2003 totaling $6,694.91 and for treatment provided from May 5, 2003 to May 8, 2003

5

totaling $2,220.00.  Upon information and belief, Heater alleges that the charges were billed to Medicaid. (Id., ¶ 26, § D.)

The Amended Complaint also discusses exactly why Heater believes that senior management knew of the allegedly fraudulent behavior.  Again, there are no documents supporting the assertions.  Heater contends that the Director of Corporate Compliance told him that she repeatedly notified senior management, including the President and Chief Financial Officer of the Hospital, of these issues.  (Id., ¶ 24.)  Heater also notes that sometime prior to November 2002, the health system, of which Holy Cross is a member, retained a consulting firm to evaluate hospital operations.  (Id., ¶ 22.)  Heater alleges that the consulting firm issued a multi-volume report that was provided to senior management.  (Id., ¶¶ 22-23.)  The report allegedly identified numerous illegal practices at the Hospital including false billing and coding of Medicare/Medicaid claims.  (Id., ¶ 23.)

Holy Cross now moves to dismiss the Amended Complaint for failure to state a claim upon which relief may be granted.  Specifically, Holy Cross alleges that the Amended Complaint fails to comply with the heightened pleading standards set forth in Federal Rule of Civil Procedure 9(b).  Holy Cross also argues that Heater's claims for retaliation and conspiracy are insufficient as a matter of law.  Heater contends that the Amended Complaint is sufficient to survive the Motion to Dismiss, and alternatively, seeks leave to amend the Amended Complaint.

## II.  ANALYSIS

### A.  Motion to Dismiss Standard

Pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint should not be dismissed for failure to state claim unless it appears beyond a doubt that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Marsh v. Butler County, 268 F.3d 1014, 1022 (11th Cir. 2001).  The allegations of the claim must be taken as true and must be read to include any theory on which the plaintiff may recover.  Cramer v. Florida, 117 F.3d 1258, 1262 n.8 (11th Cir. 1997); see also 268 F.3d at 1023; Linder v. Portocarrero, 963 F.2d 332, 334-36 (11th Cir. 1992) (citing Robertson v. Johnston, 376 F.2d 43 (5th Cir. 1967)). Taking the facts as true, a court may grant a motion to dismiss when, "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action."  Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993).

### B.  Federal Rule of Civil Procedure 9(b) Pleading Standard

Federal Rule of Civil Procedure 8(a) requires a pleading which sets forth a claim for relief to provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although generally, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief,"  the Eleventh Circuit has held that Federal Rule of Civil Procedure 9(b) applies to actions by relators under the FCA. United States ex rel. Clausen v. Laboratory Corp. of Am., 290 F.3d 1301, 1308-09 (11th

7

Cir. 2002) (citations omitted); Mobil Oil Corp. v. Dade Cty. Esoil Mgmt., 982 F. Supp.

873, 877 (S.D. Fla. 1997) (quoting SEC v. ESM Group, Inc., 835 F.2d 270, 272 (11th

Cir. 1988)).  Rule 9(b) requires a plaintiff alleging fraud to plead with particularity,

except that "[m]alice, intent, knowledge, and other conditions of mind of a person may

be averred generally."  Fed. R. Civ. P. 9(b).  Rule 9(b) is satisfied if the complaint sets

forth:

> (1) precisely what statements were made in what documents or oral
> representations or what omissions were made, (2) the time and place of
> each such statement and the person responsible for making (or, in the
> case of omissions, not making) same, (3) the content of such statements
> and the manner in which they misled the plaintiff, and (4) what the
> defendants obtained as a consequence of the fraud.

Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001) (quoting Brooks v.

Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1371 (11th Cir. 1997)).

"Rule 9(b)'s heightened pleading standard may be applied less stringently,

however, when specific 'factual information [about the fraud] is peculiarly within the

defendant's knowledge or control.'"  Hill v. Morehouse Medical Assocs., Inc., Case No.

02-14429, 2003 WL 22019936, at *3 (11th Cir. Aug. 15, 2003) (alternations in original)

(quoting United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Blue Cross

Blue Shield of Ga., Inc., 755 F. Supp. 1040, 1052 (S.D. Ga.)).  In that situation, a

plaintiff's complaint may be plead upon information and belief provided that the legal

theory is supported "'with factual allegations that make [her] theoretically viable claim

plausible.'"  Id. (alteration in original) (quoting In re Rockefeller Ctr. Props., Inc. Sec.

Litig., 311 F.3d 198, 216 (3d Cir. 2002)); see also Stinson, 755 F. Supp. at 1052.

The stringent requirements of Rule 9(b) "must be harmonized with Rule 8(a)."

8

Mobil, 982 F. Supp. at 878.  "The Eleventh Circuit has held that 'Rule 9(b) must not be read to abrogate Rule 8.'" Id. (quoting Friedlander v. Nims, 755 F.2d 810, 813 (11th Cir. 1985)).  Essentially, the requirements of Rule 9(b) are satisfied if the complaint "provide[s] a reasonable delineation of the underlying acts and transactions allegedly constituting the fraud" such that the defendants have "fair notice of the nature of plaintiff's claim and the grounds upon which it is based."  Id. (internal citations and quotations omitted).

### C.  Submitting Fraudulent and False Claims in Violation of the False Claims Act-Counts I, III, V, and VII

The FCA[3], in relevant part, permits private persons to file *qui tam* actions on behalf of the United States against any person who:

> (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;

> (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government.

31 U.S.C. § 3729(a)(1)-(2).  In this context, "knowingly" means a person who "(1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the

---

[3]  "The Florida FCA, is modeled after and tracks the language of, the federal False Claims Act."  United States ex rel. Mueller v. Eckerd Corp., 1998 U.S. Dist. LEXIS 23500, at *3 (M.D. Fla. Oct. 2, 1998) (Order of United States Magistrate Judge affirmed by 35 F. Supp. 2d 896 (M.D. Fla. 1999)).  The parties do not dispute that the same standard is applied to the evaluation of the claims under both statutes.  Therefore, unless otherwise stated, the Court shall hereinafter refer to the requirements of the federal FCA and all discussions shall also apply to Heater's claims under the Florida FCA.  The relevant portions of the FCA are Fla. Stat. §§ 68.081 - 60.091.

information." 31 U.S.C. § 3729(b).  No proof of specific intent is required.  Id.  A "claim"

is defined, in relevant part, as "any request or demand, whether under a contract or

otherwise, for money or property which is made to a contractor, grantee, or other

recipient if the United States Government provides any portion of the money or property

which is requested or demanded."  31 U.S.C. § 3729(c).

     To succeed in an FCA claim, a relator must prove the following three elements:

"(1) a false or fraudulent claim; (2) which was presented, or caused to be presented, by

the defendant to the United States for payment or approval; (3) with the knowledge that

the claim was false."  United States *ex rel.* Walker v. R&F Properties of Lake Cty., Inc.,

433 F.3d 1349, 1355 (11th Cir. 2005).  "The False Claims Act does not create liability

merely for a health care provider's disregard of Government regulations or improper

internal policies unless, as a result of such acts, the provider knowingly asks the

Government to pay amounts it does not owe."  Clausen, 290 F.3d at 1311.  Therefore,

to establish a valid FCA claim, a relator must show that the defendant actually

presented a false or fraudulent claim to Medicare/Medicaid for reimbursement.  Id.

"The submission of a claim is . . . the *sine qua non* of a False Claims Act violation."  Id.

     Since claim submission is an integral part of a valid FCA claim and the

heightened pleading standard of Rule 9(b) applies to FCA cases, the Eleventh Circuit

has held that a plaintiff in an FCA action must describe the billing scheme and the claim

submission in detail.  Id.  A plaintiff may not "describe a private scheme in detail but

then [] allege simply and without any stated reason for his belief that claims requesting

illegal payments must have been submitted, were likely submitted or should have been

submitted to the Government."  Id.  A plaintiff must provide some support for the

10

allegation.  Id.  Eleventh Circuit case law provides guidance on this issue.  In

determining whether a complaint satisfies the requirements of Rule 9(b), the Eleventh

Circuit has focused on the relationship between the relator and the defendant, the

language of the complaint, and the support, if any, attached to the complaint.

In Clausen, the relator was a corporate outsider.  He was a competitor of the

defendant who never worked for the defendant.  Id. at 1302-03.  The relator alleged

that the defendant violated the FCA by charging for tests that were not medically

necessary and were not done at the direction of a physician.  Id. at 1303.  The first

amended complaint provided support including references to specific conversations

with the defendant's employees, descriptions of billing codes used for medical tests,

and the testing histories of three patients.  Id. at 1304.  The complaint also contained

documentary exhibits relating to the medical tests performed.  Id. at 1304 n.7.  The

exhibits did not reference billing records.  Id.  In response to the district court's order

regarding the defendant's first motion to dismiss, the relator filed a second amended

complaint.  Id. at 1306-07.  The second amended complaint explained the alleged

scheme in more detail and provided a blank copy of the form used by health care

providers when seeking reimbursement from the Government.  Id.  However, again, the

complaint did not include a specific reference to the defendant's billing processes.  Id.

at 1307.  The Eleventh Circuit held that the relator's complaint should be dismissed

because "nowhere in the blur of facts and documents assembled . . . can one find any

allegation, stated with particularity, of a false claim actually being submitted to the

Government."  Id. at 1312.  To illustrate the types of information that may have helped

the relator's complaint survive the motion to dismiss, the court noted: "No amounts of

charges were identified.  No actual dates were alleged.  No policies about billing or even second-hand information about billing practices were described . . . .No copy of a single bill or payment was provided."  Id. at 1312, 1312 n.21.

In Walker, the relator worked as a nurse practitioner for the defendant for over two years.  433 F.3d at 1353.  She alleged that the defendant violated the FCA by billing Medicare for services rendered by nurses and nurse practitioners as if they were rendered "incident to the service of a physician."[4]  Id.  The complaint did not contain documentary support for the relator's claims.  See id. at 1360.  Regardless, the Eleventh Circuit affirmed the district court's decision denying the motion to dismiss.  Id. at 1360.  The court noted that unlike the relator in Clausen, the relator in Walker was an employee of the defendant who knew, first hand, that she was not assigned her own billing number.  Id.  Additionally, the complaint detailed a conversation wherein the office administrator told the relator that she did not have her own billing number because the defendant only billed nurse and nurse practitioner services as rendered "incident to the service of a physician."  Id.  The court found the detailed allegations were sufficient to meet the requirements of Rule 9(b).  Id.

Finally, in Hill, the relator was employed by the defendant for seven months as a certified professional coder and biller.  2003 WL 22019936, at *1.  The complaint described the billing and coding process in detail and provided a blank copy of the billing form.  Id.  Additionally, the relator provided details about the five alleged

_____

[4]  When the Government is billed for services rendered by a nurse or nurse practitioner which are not incident to the services of a physician, the provider is reimbursed at 85-percent of the rate otherwise paid.  Walker, 433 F.3d at 1353.

fraudulent billing schemes, who specifically engaged in them, and the frequency in which they occurred.  Id.  The Eleventh Circuit held that the relator's complaint was sufficient to survive the defendant's motion to dismiss.  Id., at *5.  The court determined that the complaint alerted the defendants to the precise misconduct at issue in the case and the relator's personal experience as an employee in the billing department provided the requisite "indicia of reliability" to satisfy the Rule 9(b) pleading requirements.  Id. Therefore, the Eleventh Circuit reversed the district court's decision to grant the defendant's motion to dismiss.

In this case, Heater was employed as an Executive Director in Holy Cross's billing department for one month.  Therefore, like the relator in Hill, if documentation necessary to plead this case are peculiarly within Holy Cross's control, Heater's personal experience with the billing process can provide the "indicia of reliability" required to survive Holy Cross's Motion to Dismiss.  Heater can plead upon information and belief that the bills were submitted to Medicare/Medicaid.  However, as in Clausen, Heater's Amended Complaint fails to discuss Holy Cross's billing process and is void of any documentary exhibits.  The Amended Complaint does contain some specific examples of Heater's allegations.  This is especially seen in the allegations regarding the alleged violation of the 72 Hour Rule, knowingly filing false credit balance reports, and submitting claims that include false and inaccurate information.  Although again, even with the examples provided to illustrate these claims, the allegations are not supported with an explanation of the billing process or sufficient documentation.[5]

_____

[5] In response to the dissent's arguments, the majority in Clausen specifically notes that some, but not all, of the documents listed would have been sufficient to

Therefore, the Court finds that Amended Complaint does not meet the requirements of Rule 9(b).  Heater will be granted leave to amend the Amended Complaint to provide further specifics.[6]

Heater does not support the remaining allegations in the Amended Complaint (listed in § I of this Order as alleged fraudulent practices 2, 5-7) with any specificity.  For these allegations, Heater does nothing more than discuss the FCA requirements and allege upon information and belief that Holy Cross violated the requirements.  Based on these assertions, it cannot be concluded that Heater provided Holy Cross with "a reasonable delineation of the underlying acts and transactions allegedly constituting the fraud."  Relying on United States v. Dyncorp Int'l, LLC, Heater asserts that all allegations can survive Holy Cross's Motion to Dismiss if at least some of the claims are pled with specificity sufficient to satisfy the requirements of Rule 9(b).  Case No. 603CV816ORL31JGG, 2006 WL 47791, at *4 (M.D. Fla. Jan. 9, 2006) (citing Clausen, 290 F.3d at 1312 n.21).  Although this argument remains uncontested by Holy Cross, the Court need not reach this issue at the present time because none of Heater's allegations currently satisfy the requirements of Rule 9(b) as interpreted by the Eleventh Circuit in FCA cases.

---

survive the motion to dismiss.  290 F.3d at 1312 n.21.  However, more recent Eleventh Circuit cases have focused specifically on whether the relator provided information on the billing process.  See, e.g. Walker, 433 F.3d at 1360.

[6]  Heater's response alleges that the requisite documentation can be provided, but was omitted to protect patient privacy.  The Court will allow Heater leave to amend the Amended Complaint.  Any patient information should be omitted to protect privacy.  Patients can be referred to by their initials or other appropriate pseudonym.

## D.  Retaliation in Violation of the False Claims Act - Count IV

Count IV of Heater's Amended Complaint alleges that Holy Cross discriminated against him in violation of 31 U.S.C. § 3730(h) because he investigated violations of the FCA.[7]  Section 3730(h) provides, in relevant part, for a cause of action against an employer by "[a]ny employee who is discharged . . . or in any other manner discriminated against in the terms and conditions of employment . . . because of lawful acts done by the employee . . . in furtherance of an action under [the FCA] including investigation for, initiation of, testimony for, or assistance in an action" filed under the FCA.  It is well-settled that to establish a claim under § 3730(h), a plaintiff bears the burden of proving: (1) he was engaged in a protected activity; and (2) his employer knew about it.  Some courts have also held that a plaintiff must establish that the employer discharged or otherwise discriminated against the employee because of involvement in the protected activity.  McKenzie v. BellSouth Telecomms., Inc. ("McKenzie II")[8], 219 F.3d 508, 514 (6th Cir. 2000) (citations omitted); see also Mack v. Augusta-Richmond Cty., Ga., 148 Fed. Appx. 894 (11th Cir. 2005).  Other courts have held that once a plaintiff establishes the first two elements, "the burden shifts to the employer to prove that the employee would have been terminated even if he had not

---

[7]  Holy Cross's Motion to Dismiss inadvertently refers to Heater's claim for retaliation as Count III.

[8]  The Sixth Circuit reviewed the issues in McKenzie twice.  In the first instance, the Sixth Circuit reversed the district court's granting of the defendant's motion to dismiss as it related to the relator's claim for retaliation.  McKenzie v. BellSouth Telecomms., Inc., 123 F.3d 935 (6th Cir. 1997).  In the second appeal, the Sixth Circuit affirmed the district court's grant of summary judgment.  219 F.3d 508 (6th Cir. 2000).  For clarity, this Court shall refer to these cases as "McKenzie I" and McKenzie II, respectively.

engaged in the protected conduct." Dookeran v. Mercy Hospital of Pittsburgh, 281 F.3d 105, 107 (3d Cir. 2002).

Several courts have held that 31 U.S.C. § 3730(h) allows for retaliation claims to be brought by internal whistleblowers. Robertson v. Bell Helicopter Textron, Inc., 32 F.3d 948, 951 (5th Cir. 1994) (citing numerous district court decisions for this proposition). As illustrated below, courts differ on how much information an employee must provide to an employer before it can be said that the employee engaged in a protected activity that was known by the employer. The Eleventh Circuit has not directly addressed this issue. However, in evaluating whether an employee can bring a claim for retaliation pursuant to 31 U.S.C. § 3730(h) even if an FCA claim was not actually filed, the Eleventh Circuit held that "§ 3730(h) protection is available . . . where the filing of such an action, by either the employee or the government, was a 'distinct possibility' at the time" the employee engaged in the protected activity. Childree v. UAP/GA AG CHEM, Inc., 92 F.3d 1140, 1146 (11th Cir. 1996).

Holy Cross relies on several circuit cases to support its contention that the Amended Complaint in this case fails to state a valid claim for retaliation. Holy Cross cites Zahodnick v. Int'l Bus. Machines, Corp. for the proposition that merely reporting to a supervisor that an employer may be mischarging the government does not create a protected activity actionable under the FCA. 135 F.3d 911, 914 (4th Cir. 1997). Similarly, Holy Cross relies on Dookerman in which the Third Circuit held that even though an FCA claim does not actually have to be filed, the plaintiff did not state a valid retaliation claim because there was no possibility that the plaintiff could have filed a viable FCA action. 281 F.3d at 108. Finally, Holy Cross cites McKenzie I wherein the

16

Sixth Circuit adopted the rationale of a district court in the Southern District of New York that required an employee to supply "'sufficient facts from which a reasonable jury could conclude that the employee was discharged because of activities which gave the employer reason to believe that the employee was contemplating a qui tam action against it.'"  McKenzie I, 123 F.3d at 944 (quoting Mikes v. Strauss, 889 F. Supp. 746 (S.D.N.Y. 1995)).  The court in McKenzie I held that the complaint alleged a viable retaliation claim because the concerns expressed to management were not within the relator's scope of employment and the relator showed her supervisors a newspaper article about litigation against a company employing a similar scheme.  Id. at 944-45.  These actions established that the employer knew of the protected activity.  Id.

Heater relies on United States *ex rel.* Longest v. Dyncorp to support its assertion that the Amended Complaint states a valid cause of action for retaliation.  Case No. 603CV816ORL31JGG, 2006 WL 47791 (M.D. Fla. Jan. 9, 2006).  In Longest, the relator was employed by the defendant as a senior accountant.  The relator alleged that she uncovered fraudulent schemes while performing sample audits, and no action was taken by management once she reported the problems to her supervisors.  Id. at *3.  The court found that it was sufficient to plead only that the relator was discriminated against in the terms and conditions of her employment because of acts done in furtherance of the FCA.  Id.  In so holding, the court cited the Eleventh Circuit's holding in Childree and determined that the relator was "protected from retaliation so long as there was merely a distinct possibility of the filing of a False Claims Act at the time she was allegedly complaining about overcharges."  Id., at *6 (citing Childree, 92 F.3d at 1146.

17

The Court also finds the Fifth Circuit's opinion in <u>Robertson</u>, a case not cited by either party, relevant to the instant case.  In <u>Robertson</u>, the Fifth Circuit held that the plaintiff's actions of reporting problems to his superiors did not constitute a protected activity because he never used the terms "illegal," "unlawful," or *qui tam* action" when discussing his concerns.  <u>Id.</u>  The court noted that because the concerns raised by the plaintiff were within the scope of his employment there was no reason for the defendant employer to believe that the activities were in furtherance of the FCA without further information from the plaintiff.  <u>Id.</u> at 952.

In this case, the Court finds that Heater's actions, as alleged in the Amended Complaint, are sufficiently pled to survive Holy Cross's Motion to Dismiss.  Although the Eleventh Circuit's holding in <u>Childree</u> did not specifically address the issue in the instant case, the Court agrees with the opinion in <u>Longest</u> and finds the holding in <u>Childree</u> relevant.  There was a "distinct possibility" that an FCA action could be filed when Heater was engaging in his investigation.  Further, under the liberal motion to dismiss standard, Heater has established that Holy Cross knew of his involvement in this protected activity.  The Amended Complaint states that Heater "informed the Director of Corporate Compliance of the extremely widespread and severe illegal practices he had discovered."  (Amend. Compl., ¶ 24.)  Even under the stringent standard in <u>Robertson</u>, these allegations would be sufficient because Heater used the term "illegal" when discussing concerns that were within the scope of his employment.  However, taking the allegations in the Amended Complaint as true, there is no indication that the Director of Corporate Compliance was a supervisor.  Heater merely discussed findings that were within the scope of his employment with a similarly situated employee.

18

Regardless, the Amended Complaint does state that Heater "attempted to enlist the help of Defendants' senior management in correcting these problems and preventing false and fraudulent claims from being submitted in the future."  (Amend. Compl., ¶ 21.)  Based on this allegation, the Court finds that senior management was made aware of Heater's concerns.  Therefore, Heater has established that there was a distinct possibility that an FCA claim could be filed at the time he engaged in his investigation and his employer knew that he was engaged in a protected activity.  Holy Cross's Motion to Dismiss will be denied as it relates to Count IV of Heater's Amended Complaint.

### E.  Conspiring to Violate the False Claims Act - Counts II and VI

Lastly, Holy Cross moves to dismiss Counts II and VI of the Amended Complaint which allege that Defendants conspired to violate the FCA and the Florida FCA.  Title 31 U.S.C. § 3729(a)(3) prohibits "conspiring to defraud the government by getting a false or fraudulent claim allowed or paid."  To state a valid claim thereunder, the plaintiff must establish: "(1) that the defendant conspired with one or more persons to get a false or fraudulent claim paid by the United States; (2) that one or more of the conspirators performed any act to effect the object of the conspiracy; and (3) that the United States suffered damages as a result of the false or fraudulent claim."  Corsello v. Lincare, Inc., 428 F.3d 1008, 1014 (11th Cir. 2005) (internal quotations omitted).  "Although Rule 9(b) does not list conspiracy as a cause of action which must be pled with particularity, a complaint will be dismissed where the allegations are conclusory and vague."  Primerica Fin. Servs., Inc. v. Mitchell, 48 F. Supp. 2d 1363, 1369 (S.D. Fla. 1999) (citing Fullman v. Graddick, 739 F.2d 553, 557 (11th Cir. 1984)).  A

19

defendant charged with civil conspiracy "must be informed of the nature of the conspiracy." <u>Fullman</u>, 739 F.2d at 557.

In this case, the Court finds that the Amended Complaint sufficiently pleads a claim for conspiracy. Specifically, Heater alleges that Ms. Lourdes Belaustegui, Director of the Business Office submitted claims she knew to be false because Chief Financial Office Linda Wilford ordered her to do so. (Amend. Compl., ¶ 26(C).) This example is more than a mere conclusory allegation. It does not require Holy Cross to speculate as to the nature of the alleged conspiracy. Although the example does not expressly state that these actions were performed in concert as part of a conspiracy, the Court finds that Heater has sufficiently pled a claim for conspiracy to survive the liberal motion to dismiss standard.

Holy Cross also argues that Counts II and VI should be dismissed because the claims for conspiracy are barred by the intracorporate conspiracy doctrine. The intracorporate conspiracy doctrine states that "a corporation cannot conspire with its employees, and its employees, when acting within the scope of their employment, cannot conspire among themselves." <u>McAndrew v. Lockheed Martin Corp.</u>, 206 F.3d 1031, 1036 (11th Cir. 2000). Essentially, if the only persons involved in a conspiracy are a corporation and its employees, multiple actors do not exist to form the basis for a conspiracy. <u>Id.</u>

One exception to this general rule is that the intracorporate conspiracy doctrine does not apply to corporations and its employees accused of criminal conspiracy. <u>E.g.</u>, <u>id.</u> at 1035. It some cases, it does not matter whether the claim arises in the context of a civil or criminal matter. <u>Id.</u> at 1040. In <u>McAndrew</u>, the Eleventh Circuit evaluated

20

whether the criminal exception to the intracorporate conspiracy doctrine applied to civil cases alleging a conspiracy to deter a witness from testifying via force, intimidation or threat in violation of 42 U.S.C. § 1985(2).  The court held that since a claim under 42 U.S.C. § 1985 "necessarily alleges a criminal conspiracy" because the language of 18 U.S.C. § 371 mirrors the language of the civil statute, the criminal exception to the intracorporate conspiracy doctrine applied.  The holding in McAndrews was extended to the FCA context in an unpublished opinion, United States ex rel. Beattie v. Comsat Corp., Case No. 8:96-CIV-966-T-24MAP, at 6-7 (M.D. Fla. April 11, 2001) (attached to United States Statement of Interest [DE 69] as Exhibit 2).  But see United States v. Warnings, Case No. CIV. A. 93-4541, 1994 WL 396432, at *4-*5 (E.D. Pa. July 26, 1994) (finding that introcorporate conspiracy doctrine applied to FCA action only because complaint alleged that defendants acted in their individual capacities).

The Court agrees with the United States' position and the finding in Beattie.  As in McAndrews, 18 U.S.C. § 286 is a criminal statute which essentially mirrors the language of the FCA, 31 U.S.C. § 3729(a)(3).  It follows that by alleging a claim for civil conspiracy pursuant to the FCA, Heater "necessarily alleges a criminal conspiracy" in violation of 18 U.S.C. § 286.  However, no party has cited, and the Court has similarly not found a Florida statute which provides for criminal penalties for conspiracy actions like those proscribed by the Florida FCA.  Therefore, the Court finds that the intracorporate conspiracy doctrine does not apply to the instant FCA claim, but does apply to Heater's claim for conspiracy under the Florida FCA.  Holy Cross's Motion to Dismiss shall be denied as to Count II, but granted as to Count VI without leave to

amend because under Florida law there is no theory under which Heater may recover.[9]

### III.  CONCLUSION

Based on the foregoing, the Motion to Dismiss First Amended Complaint for Violations of the False Claims Act filed by Defendants Holy Cross Hospital, Inc. and Holy Cross Health Ministries [DE 62] shall be granted in part and denied in part as delineated below.  Nevertheless, a plaintiff has the right to amend a complaint at least once to eliminate any deficiencies.  Clausen, 290 F.3d at 1308; Cooper v. Blue Cross & Blue Shield of Fla., Inc., 19 F.3d 562, 568-69 (11th Cir. 1994).  Federal Rule of Civil Procedure 15(a) provides that leave to amend the complaint shall be freely given as "justice so requires."  As such, Plaintiff will be granted leave to amend some portions of the Amended Complaint in accordance with this Order.  Therefore, it is

**ORDERED AND ADJUDGED** as follows:

1.      The Motion to Dismiss First Amended Complaint for Violations of the False Claims Act filed by Defendants Holy Cross Hospital, Inc. and Holy Cross Health Ministries [DE 62] is **GRANTED in part and DENIED in part**.

2.      The Motion to Dismiss First Amended Complaint for Violations of the False Claims Act filed by Defendants Holy Cross Hospital, Inc. and Holy Cross Health Ministries [DE 62] is **GRANTED** as to Counts I, III, V, VI, and VII.

3.      Counts I, III, V and VII shall be **DISMISSED WITHOUT PREJUDICE**.

---

[9]  The following bases may warrant a district court's denial of leave to amend: "'undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment [and] futility of amendment.'"  Thomas v. Davie, 847 F.2d 771, 774 (11th Cir. 1988) (quoting Forman v. Davis, 371 U.S. 178, 182 (1962)).

Relator Lanie Joe Heater may file a second amended complaint no later than the close of business on November 9, 2006.  Failure to file a second amended complaint shall result in the dismissal of Counts I, III, IV, V and VII with prejudice.

      3.      Count VI of the Amended Complaint shall be **DISMISSED WITH PREJUDICE**.  Relator is not granted leave to amend this Count.

      4.      The Motion to Dismiss First Amended Complaint for Violations of the False Claims Act filed by Defendants Holy Cross Hospital, Inc. and Holy Cross Health Ministries [DE 62] is **DENIED** as to Counts II and IV.

      **DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 18th day of October, 2006.

JAMES I. COHN
United States District Judge

Copies Furnished:

Stephanie Fidler, AUSA
Peter D. Keisler, AAG
Michael F. Hertz, USDOJ
Daniel Anderson, USDOJ
Michal L. Tingle, USDOJ
Elaine Johnson James, Esq.
Michael P. Pagnozzi, Esq.
Wayne T. Lamprey, Esq.
Daniel A. Miller, Esq.