UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 03–62097-CIV-COHN/SNOW

UNITED STATES OF AMERICA and the
STATE OF FLORIDA, ex rel. LANIE JOE
HEATER,

       Plaintiffs,

vs.

HOLY CROSS HOSPITAL, INC., HOLY
CROSS MEDICAL GROUP, HOLY CROSS
HEALTH MINISTRIES, INC., and
DOES 1 through 50,

       Defendants.
_____/

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS 2nd AMENDED COMPLAINT

**THIS CAUSE** is before the Court upon the Motion to Dismiss Second Amended Complaint filed by Defendants Holy Cross Hospital, Inc. and Holy Cross Health Ministries [DE 88], the parties' Joint Motion to Remove Case from Trial Docket and for New Scheduling Conference to Reset All Pretrial Deadlines [DE 92] and Defendants' Motion for Partial Stay of Discovery [DE 79]. The Court has carefully considered the motions and is otherwise fully advised in the premises.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

Lanie Joe Heater ("Heater") is a *qui tam* relator who filed the above-captioned action on behalf of himself, the United States and the State of Florida alleging violations

---

[1] This section is largely adopted from the Court's Order Granting in Part and Denying in part Defendants' Motion to Dismiss First Amended Complaint [DE 75].

of the False Claims Act, 31 U.S.C. § 3729, *et seq.* ("FCA") and the Florida False Claims Act, Fla. Stat. § 68.082, *et seq* ("Florida FCA").  The First and Second Amended Complaints in this case allege the following seven counts against Defendants Holy Cross Hospital, Inc., Holy Cross Health Ministries, Inc., and fifty unnamed defendants identified in the Amended Complaints as "Defendant Does 1-50": (1) Submitting false claims in violation of the FCA, 31 U.S.C. § 3729(a)(1) ("Count I"); (2) Conspiring to violate the FCA, 31 U.S.C. § 3729(a)(3) ("Count II"); (3) Making false records to get claims paid in violation of the FCA, 31 U.S.C. § 3729(a)(2) ("Count III"); (4) Discriminating against an employee because of his lawful conduct in furtherance of the discovery and prevention of violations of the FCA, 31 U.S.C. § 3730(h) ("Count IV"); (5) Violating the Florida FCA, Fla. Stat. § 68.082(2)(c) ("Count V"); (6) Conspiring to violate the Florida FCA, Fla. Stat. § 68.082(2)(c) ("Count VI"); and (7) Making false records to get claims paid, in violation of the Florida FCA, Fla. Stat. § 68.082(2)(b) ("Count VII").

     Heater was employed by Defendant Holy Cross Hospital, Inc. ("Hospital") as the Executive Director of Revenue Management during May 2003.  (Sec. Am. Compl., ¶ 19 [DE 59].)  According to Heater's written job description, his duties included "all administrative and clinical functions that contribute to the capture, management and collection of patient service revenue," and "ensuring compliance with relevant regulations, standards, and directives from regulatory agencies and third-party payors."  (Id.)  Heater alleges that while he was employed by the Hospital, he conducted interviews of mid-level management and independently reviewed medical and billing records.  (Id., ¶ 20.)  The information gathered led Heater to identify routine billing

practices that failed to comply with Medicare/Medicaid requirements and allegedly resulted in false and fraudulent billing.  (Id.)  Heater states that he alerted Holy Cross's senior management to his concerns.  (Id., ¶ 21.)  Upon information and belief, Heater states that senior management was already aware of the problems.  (Id., at ¶¶ 21-25.)  Regardless, Heater contends that management continued the practices.  (Id., ¶ 2.)

Based on his understanding of Holy Cross's billing procedures and the alleged failure to correct problems that resulted in illegal practices, Heater filed the above-captioned action on November 24, 2003 on behalf of himself, the United States and the State of Florida pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3729, *et seq.* ("FCA") and the Florida False Claims Act, Fla. Stat. § 68.082, *et seq*. ("Florida FCA").[2]  In accordance with 31 U.S.C. § 3730(b) and Fla. Stat. § 68.083, the Complaint was filed under seal to allow the United States and the State of Florida time to decide whether to intervene in the action.  On April 3, 2006, the United States and the State of Florida both elected to decline intervention in this case [DE's 52, 54].  The Complaint was thereafter unsealed and Heater was notified of his right to maintain the action on behalf of himself, the United States and the State of Florida.  Heater elected to proceed with litigation.

On August 1, 2006, Heater served Defendants Holy Cross Hospital, Inc. and Holy

---

[2] The *qui tam* provisions of the FCA and the Florida FCA authorize private persons to initiate civil actions alleging fraud against the United States and the State of Florida, respectively.  31 U.S.C. § 3730(b); Fla. Stat. § 68.083(2).  If, as here, the Government declines intervention in the action, the relator can proceed with the claim and recover between 25 and 30 percent of any monies recovered plus reasonable expenses and attorneys' fees and costs.  31 U.S.C. § 3730(d).

Cross Health Ministries, Inc. (collectively "Holy Cross") with his First Amended Complaint ("Amended Complaint") [DE 59].  The Amended Complaint specifically alleges that Defendants engaged in the following fraudulent practices:

(1)     Intentional violation of the "72 Hour Rule" which prohibits a hospital from billing Medicare/Medicaid for outpatient services provided to a patient/beneficiary during the 72 hour period immediately preceding admission of the patient/beneficiary to the hospital;

(2)     Submitting false claims for "bad debt," losses hospitals suffer when patients fail to pay medical bills, by failing to make reasonable efforts to collect the debt before submission to Medicare/Medicaid;

(3)     Knowingly filing false quarterly "credit balance" reports indicating that Holy Cross owes nothing to Medicare/Medicaid;

(4)     Submitting claims that include false and inaccurate information;

(5)     Submitting claims that contain inaccurate and inflated coding;

(6)     Failing to identify other potential payors and submitting claims to Medicare that should have been submitted to other payors; and

(7)     Fraudulently billing Medicare by charging for services that were not provided, charging for services that were not medically necessary, and submitting false and inaccurate cost reports.

(Id., ¶ 26.)

Holy Cross moved to dismiss the First Amended Complaint for failure to state a claim upon which relief may be granted.  Specifically, Holy Cross alleged that the

Amended Complaint fails to comply with the heightened pleading standards set forth in Federal Rule of Civil Procedure 9(b). Holy Cross also argued that Heater's claims for retaliation and conspiracy are insufficient as a matter of law.

The Court granted in part and denied in part the motion to dismiss the First Amended Complaint. The Court granted the motion as to Counts I, III, V, VI, and VII, but gave leave to Plaintiff to file another amended complaint [DE 75]. The Court's granting of dismissal as to Count VI was done with prejudice, however, the Court later granted Plaintiff's motion for reconsideration and reinstated that claim [DE 94]. The Court denied the motion as to Counts II and IV. Plaintiff has now filed a Second Amended Complaint.

The Second Amended Complaint adds significant detail to paragraph 26 regarding the practices described above. In addition, the Second Amended Complaint adds as attachments redacted copies of patient billing records, a Cost Report, and a Medicare Credit Balance Report. Exhibits to Sec. Am. Compl. In addition to adding exhibits to support the Plaintiff's contentions, the text of the Second Amended Complaint provides the following specific examples of allegedly fraudulent behavior:

(1)  The issuance of form UB-92 Uniform Institutional Providers Bill ("UB-92 Bill") for emergency room services rendered on March 31, 2003 for charges totaling $2,693.40, part or all of which was paid for by Medicare.[3] Heater alleges that another UB-92 Bill was issued for the same patient for in-patient services provided between April 3, 2003 and April 17, 2003 totaling

---

[3] The Amended Complaint states that the names of all patients referenced in the examples were omitted to protect the patients' privacy.

$60,604.45. Heater contends that the second bill sought payment for services provided within 72 hours of the emergency room treatment; (Id., ¶ 26, § A, also Exhibits A and B.)

(2) A UB-92 Bill for outpatient services rendered on April 25, 2003 and billed to Medicare in the amount of $115.00. Heater alleges that Hospital records indicate that the same patient received inpatient treatment less than 72 hours later, from April 28, 2003 to May 2, 2003, totaling $70,446.89. Upon information and belief, Heater alleges that the inpatient treatment was also billed to Medicare using a UB-92 Bill; (Id., ¶ 26, § A, also Exhibits E and F.)

(3) The filing of allegedly false Quarterly Credit Balance Reports to Medicare by Ms. Lourdes Belaustegui, Director of the Business Office, indicating that there are no Medicare credit balances to report for the quarter. Upon information and belief, Heater alleges that Chief Financial Officer Linda Wilford ordered Ms. Belaustegui to file the reports in this manner; (Id., ¶ 26, § C, also Exhibits H and I.)

(4) A patient was allegedly admitted in one area of the Hospital and discharged in another. Heater alleges that the Hospital's Patient Account Management Records show two different, but overlapping, dates for treatment of the patient. The Amended Complaint states that billing records exist for treatment from May 4, 2003 to May 8, 2003 totaling $6,694.91 and for treatment provided from May 5, 2003 to May 8, 2003 totaling $2,220.00.

Upon information and belief, Heater alleges that the charges were billed to Medicaid. (Id., ¶ 26, § D, also Exhibits J and K.)

The Second Amended Complaint also discusses exactly why Heater believes that senior management knew of the allegedly fraudulent behavior. Heater contends that the Director of Corporate Compliance told him that she repeatedly notified senior management, including the President and Chief Financial Officer of the Hospital, of these issues. (Id., ¶ 24.) Heater also notes that some time prior to November 2002, the health system, of which Holy Cross is a member, retained a consulting firm to evaluate hospital operations. (Id., ¶ 22.) Heater alleges that the consulting firm issued a multi-volume report that was provided to senior management. (Id., ¶¶ 22-23.) The report allegedly identified numerous illegal practices at the Hospital including false billing and coding of Medicare/Medicaid claims. (Id., ¶ 23.)

In response to Plaintiff's Second Amended Complaint, Defendants have again moved to dismiss this complaint for failure to state a claim.

## II. ANALYSIS[4]

### A. Motion to Dismiss Standard

Pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint should not be dismissed for failure to state claim unless it appears beyond a doubt that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Marsh v. Butler County, 268 F.3d 1014, 1022 (11th Cir.

---

[4] As with the background section, the Court has adopted significant portions of the analysis contained in its prior Order discussing the First Amended Complaint [DE 75], as the legal issue remain the same.

7

2001).  The allegations of the claim must be taken as true and must be read to include any theory on which the plaintiff may recover.  Cramer v. Florida, 117 F.3d 1258, 1262 n.8 (11th Cir. 1997); see also 268 F.3d at 1023; Linder v. Portocarrero, 963 F.2d 332, 334-36 (11th Cir. 1992) (citing Robertson v. Johnston, 376 F.2d 43 (5th Cir. 1967)).  Taking the facts as true, a court may grant a motion to dismiss when, "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action."  Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993).

### B.  Federal Rule of Civil Procedure 9(b) Pleading Standard

Federal Rule of Civil Procedure 8(a) requires a pleading which sets forth a claim for relief to provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although generally, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief,"  the Eleventh Circuit has held that Federal Rule of Civil Procedure 9(b) applies to actions by relators under the FCA.  United States ex rel. Clausen v. Laboratory Corp. of Am., 290 F.3d 1301, 1308-09 (11th Cir. 2002) (citations omitted); Mobil Oil Corp. v. Dade Cty. Esoil Mgmt., 982 F. Supp. 873, 877 (S.D. Fla. 1997) (quoting SEC v. ESM Group, Inc., 835 F.2d 270, 272 (11th Cir. 1988)).  Rule 9(b) requires a plaintiff alleging fraud to plead with particularity, except that "[m]alice, intent, knowledge, and other conditions of mind of a person may be averred generally."  Fed. R. Civ. P. 9(b).  Rule 9(b) is satisfied if the complaint sets forth:

(1) precisely what statements were made in what documents or oral

> representations or what omissions were made, (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001) (quoting Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1371 (11th Cir. 1997)).

"Rule 9(b)'s heightened pleading standard may be applied less stringently, however, when specific 'factual information [about the fraud] is peculiarly within the defendant's knowledge or control.'" Hill v. Morehouse Medical Assocs., Inc., Case No. 02-14429, 2003 WL 22019936, at *3 (11th Cir. Aug. 15, 2003) (alternations in original) (quoting United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Blue Cross Blue Shield of Ga., Inc., 755 F. Supp. 1040, 1052 (S.D. Ga.)).  In that situation, a plaintiff's complaint may be plead upon information and belief provided that the legal theory is supported "'with factual allegations that make [her] theoretically viable claim plausible.'"  Id. (alteration in original) (quoting In re Rockefeller Ctr. Props., Inc. Sec. Litig., 311 F.3d 198, 216 (3d Cir. 2002)); see also Stinson, 755 F. Supp. at 1052.

The stringent requirements of Rule 9(b) "must be harmonized with Rule 8(a)." Mobil, 982 F. Supp. at 878.  "The Eleventh Circuit has held that 'Rule 9(b) must not be read to abrogate Rule 8.'" Id. (quoting Friedlander v. Nims, 755 F.2d 810, 813 (11th Cir. 1985)).  Essentially, the requirements of Rule 9(b) are satisfied if the complaint "provide[s] a reasonable delineation of the underlying acts and transactions allegedly constituting the fraud" such that the defendants have "fair notice of the nature of plaintiff's claim and the grounds upon which it is based."  Id. (internal citations and

quotations omitted).

### C. Submitting Fraudulent and False Claims in Violation of the False Claims Act-Counts I, III, V, and VII

The FCA[5], in relevant part, permits private persons to file *qui tam* actions on behalf of the United States against any person who:

> (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;
>
> (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government.

31 U.S.C. § 3729(a)(1)-(2). In this context, "knowingly" means a person who "(1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b). No proof of specific intent is required. Id. A "claim" is defined, in relevant part, as "any request or demand, whether under a contract or otherwise, for money or property which is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded." 31 U.S.C. § 3729(c).

---

[5] "The Florida FCA, is modeled after and tracks the language of, the federal False Claims Act." United States ex rel. Mueller v. Eckerd Corp., 1998 U.S. Dist. LEXIS 23500, at *3 (M.D. Fla. Oct. 2, 1998) (Order of United States Magistrate Judge affirmed by 35 F. Supp. 2d 896 (M.D. Fla. 1999)). The parties do not dispute that the same standard is applied to the evaluation of the claims under both statutes. Therefore, unless otherwise stated, the Court shall hereinafter refer to the requirements of the federal FCA and all discussions shall also apply to Heater's claims under the Florida FCA. The relevant portions of the FCA are Fla. Stat. §§ 68.081 - 60.091.

To succeed in an FCA claim, a relator must prove the following three elements: "(1) a false or fraudulent claim; (2) which was presented, or caused to be presented, by the defendant to the United States for payment or approval; (3) with the knowledge that the claim was false." United States *ex rel.* Walker v. R&F Properties of Lake Cty., Inc., 433 F.3d 1349, 1355 (11th Cir. 2005). "The False Claims Act does not create liability merely for a health care provider's disregard of Government regulations or improper internal policies unless, as a result of such acts, the provider knowingly asks the Government to pay amounts it does not owe." Clausen, 290 F.3d at 1311. Therefore, to establish a valid FCA claim, a relator must show that the defendant actually presented a false or fraudulent claim to Medicare/Medicaid for reimbursement. Id. "The submission of a claim . . . the *sine qua non* of a False Claims Act violation." Id.

Since claim submission is an integral part of a valid FCA claim and the heightened pleading standard of Rule 9(b) applies to FCA cases, the Eleventh Circuit has held that a plaintiff in an FCA action must describe the billing scheme and the claim submission in detail. Id. A plaintiff may not "describe a private scheme in detail but then [] allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government." Id. A plaintiff must provide some support for the allegation. Id. Eleventh Circuit case law provides guidance on this issue. In determining whether a complaint satisfies the requirements of Rule 9(b), the Eleventh Circuit has focused on the relationship between the relator and the defendant, the language of the complaint, and the support, if any, attached to the complaint.

11

In Clausen, the relator was a corporate outsider.  He was a competitor of the defendant who never worked for the defendant.  Id. at 1302-03.  The relator alleged that the defendant violated the FCA by charging for tests that were not medically necessary and were not done at the direction of a physician.  Id. at 1303.  The first amended complaint provided support including references to specific conversations with the defendant's employees, descriptions of billing codes used for medical tests, and the testing histories of three patients.  Id. at 1304.  The complaint also contained documentary exhibits relating to the medical tests performed.  Id. at 1304 n.7.  The exhibits did not reference billing records.  Id.  In response to the district court's order regarding the defendant's first motion to dismiss, the relator filed a second amended complaint.  Id. at 1306-07.  The second amended complaint explained the alleged scheme in more detail and provided a blank copy of the form used by health care providers when seeking reimbursement from the Government.  Id.  However, again, the complaint did not include a specific reference to the defendant's billing processes.  Id. at 1307.  The Eleventh Circuit held that the relator's complaint should be dismissed because "nowhere in the blur of facts and documents assembled . . . can one find any allegation, stated with particularity, of a false claim actually being submitted to the Government."  Id. at 1312.  To illustrate the types of information that may have helped the relator's complaint survive the motion to dismiss, the court noted: "No amounts of charges were identified.  No actual dates were alleged.  No policies about billing or even second-hand information about billing practices were described . . . .No copy of a single bill or payment was provided."  Id. at 1312, 1312 n.21.

In Walker, the relator worked as a nurse practitioner for the defendant for over two years. 433 F.3d at 1353. She alleged that the defendant violated the FCA by billing Medicare for services rendered by nurses and nurse practitioners as if they were rendered "incident to the service of a physician."[6] Id. The complaint did not contain documentary support for the relator's claims. See id. at 1360. Regardless, the Eleventh Circuit affirmed the district court's decision denying the motion to dismiss. Id. at 1360. The court noted that unlike the relator in Clausen, the relator in Walker was an employee of the defendant who knew, first hand, that she was not assigned her own billing number. Id. Additionally, the complaint detailed a conversation wherein the office administrator told the relator that she did not have her own billing number because the defendant only billed nurse and nurse practitioner services as rendered "incident to the service of a physician." Id. The court found the detailed allegations were sufficient to meet the requirements of Rule 9(b). Id.

Finally, in Hill, the relator was employed by the defendant for seven months as a certified professional coder and biller. 2003 WL 22019936, at *1. The complaint described the billing and coding process in detail and provided a blank copy of the billing form. Id. Additionally, the relator provided details about the five alleged fraudulent billing schemes, who specifically engaged in them, and the frequency in which they occurred. Id. The Eleventh Circuit held that the relator's complaint was sufficient to survive the defendant's motion to dismiss. Id., at *5. The court determined that the

---

[6] When the Government is billed for services rendered by a nurse or nurse practitioner which are not incident to the services of a physician, the provider is reimbursed at 85-percent of the rate otherwise paid. Walker, 433 F.3d at 1353.

complaint alerted the defendants to the precise misconduct at issue in the case and the relator's personal experience as an employee in the billing department provided the requisite "indicia of reliability" to satisfy the Rule 9(b) pleading requirements. Id. Therefore, the Eleventh Circuit reversed the district court's decision to grant the defendant's motion to dismiss.

In this case, Heater was employed as an Executive Director in Holy Cross's billing department for one month. Therefore, like the relator in Hill, if documentation necessary to plead this case are peculiarly within Holy Cross's control, Heater's personal experience with the billing process can provide the "indicia of reliability" required to survive Holy Cross's Motion to Dismiss. Heater can plead upon information and belief that the bills were submitted to Medicare/Medicaid. In his Second Amended Complaint, Heater has added allegations regarding Holy Cross's billing process and documentary exhibits to support the contention that false claims were actually submitted. See pp. 6-12 of the Sec. Am. Compl. As previously noted in the Order regarding the First Amended Complaint, some specific examples of Heater's allegations were already included, particularly the allegations regarding the alleged violation of the 72 Hour Rule, knowingly filing false credit balance reports, and submitting claims that include false and inaccurate information.

Defendants also assert that Plaintiff has not supported all of the alleged schemes in the Second Amended Complaint, and therefore the Court should dismiss some of the allegations. While it is true that Heater does not support the remaining allegations in the Amended Complaint (listed in § I of this Order as alleged fraudulent practices 5-7) with

any specificity, the Court disagrees with Defendants' legal argument.  Relying on United States v. Dyncorp Int'l, LLC, Heater asserts that all allegations can survive Holy Cross's Motion to Dismiss if at least some of the claims are pled with specificity sufficient to satisfy the requirements of Rule 9(b).  Case No. 603-CV-816ORL31JGG, 2006 WL 47791, at *4 (M.D. Fla. Jan. 9, 2006) (citing Clausen, 290 F.3d at 1312 n.21).   The Court agrees, despite Defendants' arguments to the contrary.  The Court is now convinced that Heater has stated a claim with regard to Counts I, III, V and VII in his Second Amended Complaint.

     Defendants also move to dismiss the claims as to Defendant Holy Cross Health Ministries and the "Doe" Defendants, as they allege that Plaintiffs merely lump all Defendants together and make no allegations against these separate entities.  Plaintiff responds to this argument by noting that the Second Amended Complaint explains the relationship of Holy Cross Health Ministries in ¶ 15, and further defines "Defendants" to include both Holy Cross entities.  As Holy Cross Health Ministries manages the hospital defendant, it is sufficient to define both together as "Defendants" for purposes of pleading the allegations in the Second Amended Complaint, given the day-to-day interrelationship between these two entities.  As to the "Doe" Defendants, since discovery has not sufficiently commenced, the Court will allow Plaintiff an additional 90 days to identify the Doe defendants, with leave to extend that time if discovery does not proceed smoothly.

     Finally, Defendants seek to dismiss the claims under the Florida Act.  As discussed above, the standards under both the Florida Act and the Federal Act are the

same.  Defendants argue that no documentary evidence supports the Florida claims as to Medicaid claims, as opposed to the federal claims under Medicare.  Plaintiff has submitted Exhibit K, which is a redacted Medicaid claim form.  At this motion to dismiss stage, even under Rule 9(b), all the claims in the Second Amended Complaint should go forward, and Defendants' motion should be denied.

### III.  CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.Defendants' Motion to Dismiss Second Amended Complaint [DE 88] is hereby **DENIED**;

2.Defendants shall file an Answer to the Second Amended Complaint by March 1, 2007;

2.The parties' Joint Motion to Remove Case from Trial Docket and for New Scheduling Conference to Reset All Pretrial Deadlines [DE 92] and Defendants' Motion for Partial Stay of Discovery [DE 79] are both hereby **DENIED as moot**.  The Court will separately enter a new scheduling and trial order for this case.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 15th day of February, 2007.

/s/ James I. Cohn
JAMES I. COHN
United States District Judge

Copies Furnished:

counsel of record on CM/ECF