UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 03–62097-CIV-COHN/SNOW

UNITED STATES OF AMERICA and the
STATE OF FLORIDA, ex rel. LANIE JOE
HEATER,

       Plaintiffs,

vs.

HOLY CROSS HOSPITAL, INC., HOLY
CROSS MEDICAL GROUP, HOLY CROSS
HEALTH MINISTRIES, INC., and
DOES 1 through 50,

       Defendants.
_____/

## ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Defendants Holy Cross Hospital, Inc. and Holy Cross Health Ministries Motion for Summary Judgment [DE 103]. The Court has carefully considered the motion, response and reply thereto, and is otherwise fully advised in the premises. This motion became ripe on August 20, 2007.

### I.  BACKGROUND

Lanie Joe Heater ("Heater," "Relator" or "Plainitff") is a *qui tam* relator who filed the above-captioned action on behalf of himself, the United States and the State of Florida alleging violations of the False Claims Act, 31 U.S.C. § 3729, *et seq.* ("FCA") and the Florida False Claims Act, Fla. Stat. § 68.082, *et seq* ("Florida FCA"). The Second Amended Complaint in this case alleges the following seven counts against Defendants Holy Cross Hospital, Inc., Holy Cross Health Ministries, Inc., and fifty unnamed

defendants identified in the Amended Complaints as "Defendant Does 1-50": (1) Submitting false claims in violation of the FCA, 31 U.S.C. § 3729(a)(1) ("Count I"); (2) Conspiring to violate the FCA, 31 U.S.C. § 3729(a)(3) ("Count II"); (3) Making false records to get claims paid in violation of the FCA, 31 U.S.C. § 3729(a)(2) ("Count III"); (4) Discriminating against an employee because of his lawful conduct in furtherance of the discovery and prevention of violations of the FCA, 31 U.S.C. § 3730(h) ("Count IV"); (5) Violating the Florida FCA, Fla. Stat. § 68.082(2)(c) ("Count V"); (6) Conspiring to violate the Florida FCA, Fla. Stat. § 68.082(2)(c) ("Count VI"); and (7) Making false records to get claims paid, in violation of the Florida FCA, Fla. Stat. § 68.082(2)(b) ("Count VII") [DE 84].

Heater was employed by Defendant Holy Cross Hospital, Inc. ("Hospital") as the Executive Director of Revenue Management during May 2003. (Sec. Am. Compl., ¶ 19 [DE 84].) Heater was terminated after only several weeks on the job. According to Heater's written job description, his duties included "all administrative and clinical functions that contribute to the capture, management and collection of patient service revenue," and "ensuring compliance with relevant regulations, standards, and directives from regulatory agencies and third-party payors." (Id.) Heater alleges that while he was employed by the Hospital, he conducted interviews of mid-level management and independently reviewed medical and billing records. (Id., ¶ 20.) The information gathered led Heater to identify routine billing practices that failed to comply with Medicare/Medicaid requirements and allegedly resulted in false and fraudulent billing. (Id.) Heater states that he alerted Holy Cross's senior management to his concerns.

(Id., ¶ 21.)  Upon information and belief, Heater states that senior management was already aware of the problems.  (Id., at ¶¶ 21-25.)  Regardless, Heater contends that management continued the practices.  (Id., ¶ 2.)

Based on his understanding of Holy Cross's billing procedures and the alleged failure to correct problems that resulted in illegal practices, Heater filed the above-captioned action on November 24, 2003 on behalf of himself, the United States and the State of Florida pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3729, *et seq.* ("FCA") and the Florida False Claims Act, Fla. Stat. § 68.082, *et seq.* ("Florida FCA").[1]  In accordance with 31 U.S.C. § 3730(b) and Fla. Stat. § 68.083, the Complaint was filed under seal to allow the United States and the State of Florida time to decide whether to intervene in the action.  On April 3, 2006, the United States and the State of Florida both elected to decline intervention in this case [DE's 52, 54].  The Complaint was thereafter unsealed and Heater was notified of his right to maintain the action on behalf of himself, the United States and the State of Florida.  Heater elected to proceed with litigation.

On August 1, 2006, Heater served Defendants Holy Cross Hospital, Inc. and Holy Cross Health Ministries, Inc. (collectively "Holy Cross") with his First Amended Complaint ("Amended Complaint") [DE 59].  Holy Cross moved to dismiss the First Amended

---

[1] The *qui tam* provisions of the FCA and the Florida FCA authorize private persons to initiate civil actions alleging fraud against the United States and the State of Florida, respectively.  31 U.S.C. § 3730(b); Fla. Stat. § 68.083(2).  If, as here, the Government declines intervention in the action, the relator can proceed with the claim and recover between 25 and 30 percent of any monies recovered plus reasonable expenses and attorneys' fees and costs.  31 U.S.C. § 3730(d).

3

Complaint for failure to state a claim upon which relief may be granted.  Specifically, Holy Cross alleged that the Amended Complaint fails to comply with the heightened pleading standards set forth in Federal Rule of Civil Procedure 9(b).  Holy Cross also argued that Heater's claims for retaliation and conspiracy are insufficient as a matter of law.  The Court granted in part and denied in part the motion to dismiss the First Amended Complaint [DE 75].

Plaintiff filed a Second Amended Complaint on November 9, 2006 specifically alleging that Defendants engaged in the following fraudulent practices:

(1) Intentional violation of the "72 Hour Rule" which prohibits a hospital from billing Medicare/Medicaid for outpatient services provided to a patient/beneficiary during the 72 hour period immediately preceding admission of the patient/beneficiary to the hospital;

(2) Submitting false claims for "bad debt," losses hospitals suffer when patients fail to pay medical bills, by failing to make reasonable efforts to collect the debt before submission to Medicare/Medicaid;

(3) Knowingly filing false quarterly "credit balance" reports indicating that Holy Cross owes nothing to Medicare/Medicaid;

(4) Submitting claims that include false and inaccurate information;

(5) Submitting claims that contain inaccurate and inflated coding;

(6) Failing to identify other potential payors and submitting claims to Medicare that should have been submitted to other payors; and

(7) Fraudulently billing Medicare by charging for services that were not

provided, charging for services that were not medically necessary, and submitting false and inaccurate cost reports.

(Id., ¶ 26.)

This amendment added significant detail to paragraph 26 regarding the practices described above, as well as exhibits to support the Plaintiff's contentions. The following specific examples of allegedly fraudulent behavior are alleged:

(1) The issuance of form UB-92 Uniform Institutional Providers Bill ("UB-92 Bill") for emergency room services rendered on March 31, 2003 for charges totaling $2,693.40, part or all of which was paid for by Medicare.[2] Heater alleges that another UB-92 Bill was issued for the same patient for in-patient services provided between April 3, 2003 and April 17, 2003 totaling $60,604.45.  Heater contends that the second bill sought payment for services provided within 72 hours of the emergency room treatment;  (Id., ¶ 26, § A, also Exhibits A and B.)

(2) A UB-92 Bill for outpatient services rendered on April 25, 2003 and billed to Medicare in the amount of $115.00.  Heater alleges that Hospital records indicate that the same patient received inpatient treatment less than 72 hours later, from April 28, 2003 to May 2, 2003, totaling $70,446.89.  Upon information and belief, Heater alleges that the inpatient treatment was also billed to Medicare using a UB-92 Bill; (Id., ¶ 26, § A,

---

[2] The Amended Complaint states that the names of all patients referenced in the examples were omitted to protect the patients' privacy.

    also Exhibits E and F.)

(3) The filing of allegedly false Quarterly Credit Balance Reports to Medicare by Ms. Lourdes Belaustegui, Director of the Business Office, indicating that there are no Medicare credit balances to report for the quarter. Upon information and belief, Heater alleges that Chief Financial Officer Linda Wilford ordered Ms. Belaustegui to file the reports in this manner; (Id., ¶ 26, § C, also Exhibits H and I.)

(4) A patient was allegedly admitted in one area of the Hospital and discharged in another. Heater alleges that the Hospital's Patient Account Management Records show two different, but overlapping, dates for treatment of the patient. The Amended Complaint states that billing records exist for treatment from May 4, 2003 to May 8, 2003 totaling $6,694.91 and for treatment provided from May 5, 2003 to May 8, 2003 totaling $2,220.00. Upon information and belief, Heater alleges that the charges were billed to Medicaid. (Id., ¶ 26, § D, also Exhibits J and K.)

The Second Amended Complaint also discusses exactly why Heater believes that senior management knew of the allegedly fraudulent behavior. Heater contends that the Director of Corporate Compliance, Marilyn Lettman, told him that she repeatedly notified senior management, including the President and Chief Financial Officer of the Hospital, Linda Wilford of these issues. (Id., ¶ 24.) Heater also asserts that some time prior to November 2002, the health system, of which Holy Cross is a member, retained Bearing Point, a consulting firm, to evaluate hospital operations. (Id., ¶ 22.) Heater alleges that

the consulting firm issued a multi-volume report that was provided to senior management. (Id., ¶¶ 22-23.) The report allegedly identified numerous illegal practices at the Hospital including false billing and coding of Medicare/Medicaid claims. (Id., ¶ 23.)

Defendants moved to dismiss Plaintiff's Second Amended Complaint. The Court denied the motion [DE 96] and Defendants filed their Answers on March 1, 2007 [DE 98]. Defendants have now moved for summary judgment.

Plaintiff's submission in response to Defendants' motion adds little to his evidence since the filing of the Second Amended Complaint, despite having had months to conduct discovery. In fact, Plaintiff's 326 page deposition leaves the distinct impression that Plaintiff had a conflict with his superior, CFO Linda Wilford. Plaintiff alleges that the conflict arose from him presenting her with billing problems she did not want to know about it. Deposition of Lanie Joe Heater, Vol. 1, pp. 108, 145 [DE 106-2]. However, Plaintiff has now withdrawn his wrongful termination claim.[3] The deposition sheds little light on Plaintiff's burden to show "knowledge" of falsity of the submitted claims on behalf of Defendants.

## II.  ANALYSIS

### A.  Summary Judgment Standard

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

---

[3] The withdrawal of this claim is mentioned in Relator's Motion in limine, in which he seeks to preclude introduction of his employment history [DE 120].

judgment as a matter of law." Fed. R. Civ. P. 56©. The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The Court should not grant summary judgment unless it is clear that a trial is unnecessary, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323. To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. Id. at 325.

After the movant has met its burden under Rule 56©, the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). According to the plain language of Fed. R. Civ. P. 56(e), the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. Anderson, 477 U.S. at 257. "A mere 'scintilla' of evidence supporting the opposing

party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." Anderson, 477 U.S. at 249-50.

### B.  Submitting Fraudulent and False Claims in Violation of the False Claims Act- Counts I, III, V, and VII

The FCA[4], in relevant part, permits private persons to file *qui tam* actions on behalf of the United States against any person who:

> (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;
>
> (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government.

31 U.S.C. § 3729(a)(1)-(2).  In this context, "knowingly" means a person who "(1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information."  31 U.S.C. § 3729(b).  No proof of specific intent is required.  Id.  A "claim"

---

[4] "The Florida FCA, is modeled after and tracks the language of, the federal False Claims Act." United States ex rel. Mueller v. Eckerd Corp., 1998 U.S. Dist. LEXIS 23500, at *3 (M.D. Fla. Oct. 2, 1998) (Order of United States Magistrate Judge affirmed by 35 F. Supp. 2d 896 (M.D. Fla. 1999)).  The parties do not dispute that the same standard is applied to the evaluation of the claims under both statutes.  Therefore, unless otherwise stated, the Court shall hereinafter refer to the requirements of the federal FCA and all discussions shall also apply to Heater's claims under the Florida FCA.  The relevant portions of the FCA are Fla. Stat. §§ 68.081 - 60.091.

is defined, in relevant part, as "any request or demand, whether under a contract or otherwise, for money or property which is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded." 31 U.S.C. § 3729(c). In this case, the allegations revolve around claims to Medicare and Medicaid for hospital services.

To succeed in an FCA claim, a relator must prove the following three elements: "(1) a false or fraudulent claim; (2) which was presented, or caused to be presented, by the defendant to the United States for payment or approval; (3) with the knowledge that the claim was false." United States *ex rel.* Walker v. R&F Properties of Lake Cty., Inc., 433 F.3d 1349, 1355 (11th Cir. 2005). "The False Claims Act does not create liability merely for a health care provider's disregard of Government regulations or improper internal policies unless, as a result of such acts, the provider knowingly asks the Government to pay amounts it does not owe." Clausen, 290 F.3d at 1311. Therefore, to establish a valid FCA claim, a relator must show that the defendant actually presented a false or fraudulent claim to Medicare/Medicaid for reimbursement. Id. "The submission of a claim is . . . the *sine qua non* of a False Claims Act violation." Id.

Defendants assert that the few examples of inaccurate claims were simply mistakes with the element of "knowledge" of falsity missing from the claim. After a careful reading of Plaintiff's 326 page deposition, it is clear to the Court that Plaintiff's view is that Holy Cross Hospital's billing procedures were rife with mistakes that he tried to correct in the five weeks he was employed as a director over the billing and admissions departments. However, Plaintiff is incorrect in believing that mistakes

resulting in Medicare's denial of claims is equivalent to civil liability under the False Claims Act.  Deposition of Lanie Joe Heater, Vol. 2, pp. 170, 187 [DE 106-3].  Holy Cross had recently switched billing systems, which Plaintiff conceded can cause "major problems."  Id. at 265; Affidavit of Linda Wilford, ¶ 9, Exhibit A to Defendants' Concise Statement of Material Facts [DE 104-2].   While mistakes in submitting claims may violate Medicare/Medicaid regulations, for civil liability under the False Claims Act, "knowledge" of the falsity of the claim or fraudulent nature of the claim must be shown.[5]

In his deposition, Plaintiff alleges that Lourdes Belaustegui, Director of the Business Office and Director of Corporate Compliance, Marilyn Lettman, both told him that they had informed CFO Linda Wilford of false claims.  However, this is hearsay evidence, unless these employees can be said to bind the corporation.  In opposition to the motion for summary judgment, Plaintiff's only evidence of knowledge relates to the submission of the Quarterly Credit Balance Reports to Medicare.  Plaintiff does not rebut any of Defendant's evidence with regard to the other alleged False Claim Act violations in Counts I, III, V, and VII.  Therefore, upon a complete review of the record, it is clear that Defendants are entitled to summary judgment as to all claims under the False Claims Act, with the possible exception of the issue of the credit balance reports.

Turning to the issue of the credit balance reports, Plaintiff's submission in opposition to Defendant's motion consists of the correspondence between the attorney

---

[5] Of course, a "claim" must also be submitted.  In his deposition, Plaintiff essentially concedes that with respect to all the Exhibits attached to the Second Amended Complaint, billing mistakes could account for some errors, and some errors resulted in denied claims wherein Holy Cross received much **less** from Medicare than it should have received.  Heater Deposition at pp. 183-211.

for the United States and counsel for Defendants during the investigation phase of this litigation, wherein counsel explains and answers the questions concerning the credit balance reports.  One month after the end of each calendar quarter, a Medicare and/or Medicaid provider must submit a report to the federal government stating how much Medicare and/or Medicaid has overpaid the provider.  That is, how much the credit balance the provider has with Medicare and/or Medicaid.

Plaintiff alleges that the internal weekly credit balance reports Holy Cross produced, which he dealt with at regular meetings with Linda Wilford, Lourdes Belaustegui, Marilyn Lettman and others, report far higher credit balances than those submitted quarterly by Holy Cross to Medicare.  Plaintiff submits an affidavit from a paralegal who analyzed these different credit balance reports from the fourth quarter of 2000 through the third quarter of 2003.  Exhibit A to Relator's Memorandum of Law [DE 118-2].  The affidavit includes a summary that the internal reports show a credit balance of $6.4 million owing to Medicare and $506,000 owing to Medicaid, while the official quarterly reports submitted to the government show that balances owed were only $3,836.

Defendants assert that the weekly internal reports merely are a slice in time of the credit balance that is resolved by the end of the quarter.  Defendants argue in their reply memorandum that the credit balance reports are conclusory, with no evidence to explain what these reports are, how they are prepared and what information they contain.  However, Plaintiff discussed the credit balance report evidence in his deposition, Heater Deposition, Vol. 2, at pp. 207-210.

The Court concludes that Relator has presented evidence that creates a genuine issue of material fact regarding the claims in Counts III and VII concerning the submission of false credit balance reports in order to receive more money from a government program.

### C.  Conspiracy Claim

Defendants also seek summary judgment as to the conspiracy claims in Counts II and VI.  The Court had previously determined that the exception to the intracorporate conspiracy doctrine regarding criminal conspiracies extended to civil cases [DE's 75 and 94].  However, Plaintiff has failed to put forth sufficient evidence of a conspiracy.  When asked at his deposition, he "couldn't say" who Linda Wilford was conspiring with to submit false claims.  Heater Deposition, Vol. 2 at pp. 264-65.   As noted above, there is no evidence of submission of false claims, let alone a conspiracy, other than possibly regarding the credit balance report.   Though Relator testified regarding what the credit balance report contains and how it could be considered a false record submitting to Medicare, he did not have knowledge regarding any conspiracy in submitting allegedly false reports.  Therefore, summary judgment is appropriate on Counts II and VI of the Second Amended Complaint.

### D.  Rule 56(f)

Within the body of its opposition to Defendants' motion for summary judgment, Relator requests the Court to defer ruling upon the summary judgment motion pursuant to Fed. R. Civ. P. 56(f).  Relator asserts that he has only received the Executive Summary of the Bearing Point report and seeks the full report.   Relator's counsel states

that "an appropriate motion is being prepared."  Relator's Memorandum at p. 4 [DE 118].

In general, "summary judgment should not be granted until the party opposing the motion has had an adequate opportunity for discovery."  Snook v. Trust Co. of Georgia Bank of Savannah, N.A., 859 F.2d 865, 870 (11th Cir. 1988).  In this case, this request is rejected both on its merits and as untimely.  In February, 2007, the Court extended the discovery period until June 21, 2007 [DE 97].  Plaintiff did not file anything in this case (except for co-counsel's firm name change) from December 22, 2006 through July 20, 2007, when he sought an extension of the deadline to respond to Defendants' present motion for summary judgment.  Plaintiff never asked for a discovery extension until after his summary judgment response was due.   To date, no motion to compel the report has been filed.  Therefore, the request for additional discovery pursuant to Rule 56(f) is denied.

### E.  Other Defendants

Defendants' motion for summary judgment also seeks relief as to the other Defendants, Holy Cross Health Ministries and the "Doe" Defendants.  In denying the Motion to Dismiss, the Court stated that: "As Holy Cross Health Ministries manages the hospital defendant, it is sufficient to define both together as "Defendants" for purposes of pleading the allegations in the Second Amended Complaint, given the day-to-day interrelationship between these two entities."  However, Plaintiff has not added anything to the claim against Holy Cross Health Ministries since that time, and at the summary judgment stage can no longer simply rest on the allegations of the Complaint.   Since there is no evidence to support a finding of knowing submission of false claims or reports

by this Defendant, the Court grants summary judgment as to Defendant Holy Cross Health Ministries.

As to the "Doe" Defendants, in its February 15, 2007 order denying the motion to dismiss, the Court allowed Plaintiff "an additional 90 days to identify the Doe defendants." Plaintiff has still not sought to add any further named defendants. Therefore, the "Doe" Defendants are hereby dismissed from this action.

### III.  CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants Holy Cross Hospital, Inc.'s Motion for Summary Judgment [DE 103] is **GRANTED in part** as to all claims in the Second Amended Complaint, and **DENIED in part** as to the claims in Counts III and VII related to submission of false credit balance reports;

2. Defendant Holy Cross Health Ministries' Motion for Summary Judgment [DE 103] is hereby **GRANTED** on all claims against this Defendant;

3. Defendants DOES 1 to 50 are hereby **DISMISSED** from this action for failure to serve and be named as defendants;

4. This case remains on for Calendar Call on Thursday, August 30, 2007 at 1:30pm in Courtroom 203E of the United States Courthouse, 299 E. Broward Blvd, Fort Lauderdale, Florida;

5. The Court will hear argument on Plaintiff's Motion in Limine at Calendar Call.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 29th day of August, 2007.

JAMES I. COHN
United States District Judge

Copies Furnished:

counsel of record on CM/ECF